## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**VINCENT A. LAMONACA,**
**on behalf of himself and all others**
**similarly situated,**

                              **No. 18-**

               **Plaintiff,**

                              **CLASS ACTION**

   **v.**

                              **JURY TRIAL DEMANDED**

**FIRSTSTATES  FINANCIAL  SERVICES,**
**CORP.**

               **Defendant**

### CLASS ACTION COMPLAINT

## I.     INTRODUCTION

1.     This is a consumer class action brought on behalf of consumers against a debt collector for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), consumer protection state laws and common law governing Defendant's conduct. These laws prohibit debt collectors and other entities from engaging in false, deceptive, misleading or unfair collection practices.

## II.     JURISDICTION AND VENUE

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337. Supplemental jurisdiction is provided under 28 U.S.C. § 1367.

3.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## III.     PARTIES

4.     Plaintiff Vincent A. LaMonaca is an adult individual residing in New Jersey.

5.      Defendant FirstStates Financial Services Corp. ("FirstStates") is a Pennsylvania corporation with headquarters located at 200 Reading Avenue, West Reading, PA 19611. FirstStates regularly engages in the collection of consumer debt through the use of the mails.    At all times material hereto, FirstStates was a "debt collector" as that term is contemplated in section 1692a of the FDCPA.

## IV.    FACTUAL ALLEGATIONS

6.      On or about October 23, 2016, Plaintiff LaMonaca was one of three drivers involved in a minor chain-reaction automobile accident on Interstate 95 in Pennsylvania.

7.      There was resulting minor damage to the vehicles but there were no injuries.

8.      Mr. LaMonaca was not at fault in the accident.

9.      The City of Chester Fire Department was called to the scene.

10.      The Chester Fire Department rendered no assistance to Mr. LaMonaca or to his vehicle.

11.      By letter dated May 15, 2018, Defendant FirstStates attempted to collect the sum of $800.40 from Mr. LaMonaca (the "FirstStates Letter").    A redacted copy of the FirstStates Letter is attached hereto as **Exhibit A**.

12.      The account which Defendant was attempting to collect was referred to it by another debt collector, PA Fire Recovery Service ("Recovery"), which had attempted to collect the sum of $600 from Plaintiff for purported services rendered by the Chester Fire Department.

13.      The FirstStates Letter is a standardized form letter used by FirstStates in its collection business.

14.      The FirstStates Letter created confusion and misunderstanding, as described below.

15.    The FirstStates Letter was sent to Plaintiff intentionally and with the purpose of coercing him into paying a debt he did not owe.

16.    The FirstStates Letter stated as follows:

May 15 2018

Re:    PA Fire Recovery Service
       **Account#:    23-81-16-0831046-2**
       **Customer** #:  **000098838601**
       **Amount Due: $800.40**

Dear Obligor(s):

**PA Fire Recovery Service** has retained our firm to collect $800.40.   The entire balance of this debt is now due and payable because you failed to pay the obligation as agreed.   Payment should be mailed to the above address and checks or money orders made payable to **FirstStates Financial Services Corp.**

Unless within thirty (30) days after receiving this letter you notify me that you dispute the validity of the debt, or any portion thereof, I will assume the debt to be valid.

If you notify me in writing within the thirty (30) day period that the debt, or any portion of it, is disputed, I will obtain verification of the debt and send a copy to you.

Upon written request within the thirty (30) day period I will provide you with the name and address of the original creditor if different from **PA Fire Recovery Service.**

**<u>Please be advised that if a suitable resolution has not been made within thirty (30) days of this correspondence, your account may be reported to the Credit Bureau.   If reported, it may have a negative effect on how creditors respond to your credit requests and how they manage your credit accounts.</u>**

**I AM ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Very truly yours,

FIRSTSTATES FINANCIAL SERVICES CORP.

*s/ Sara Gomez*
Sara Gomez
I AM A DEBT COLLECTOR.

(Emphasis in original).

17.    The FirstStates Letter falsely, deceptively and misleadingly represented that a purported debt in the original amount of $600.00 had increased by over 33%, to $800.40.

18.    The FirstStates Letter contained several false representations and deceptive and misleading misrepresentations, including but not limited to a false statement of the character, amount or legal status of the alleged debt, in violation of section 1692e(2)(A) of the FDCPA; the threat that FirstStates would communicate credit information which it knew or which should have known to be false, in violation of section 1692e(8); and, the false statement that Mr. LaMonaca had agreed to "pay the obligation," in violation of section 1692e(10) of the FDCPA.

19.    The FirstStates Letter attempted to collect an amount not expressly authorized by an agreement creating a debt or permitted by law, in violation of section 1692f(1) of the FDCPA.

20.    The FirstStates Letter violated section 1692g of the FDCPA in a number of ways, including but not limited to stating that the recipient had **thirty days from receipt** of the May 15, 2018 Letter to dispute the validity of the debt while, at the same time, threatening to report the account "to the Credit Bureau" if a "suitable resolution has not been made **within thirty (30) days of this correspondence**."    (Emphasis supplied).    As such, the FirstStates Letter overshadowed and contradicted the validation notice required in section 1692g of the FCRA.    *See Caprio v. Healthcare Recovery Group, LLC,* 709 F.3d 142 (3d Cir. 2013); *Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000).

21.    Defendant FirstStates knew or should have known that it had no basis in law for attempting to collect money from Plaintiff and for the material misrepresentations in the FirstStates Letter.    The debt collector Recovery advises fire departments in the FAQ portion of its website that there is no legal basis for billing individuals such as Plaintiff: "Do we need to have an Ordinance in

place to bill?   Absolutely not….."   *See* https://pafrs.us/faq/.

22.    As a matter of common business practice, debt collector Recovery deliberately and intentionally attempts to collect multiple bills for purported services from every person involved in an accident, irrespective whether such person was at fault in the accident.

23.    Through its contractual relationship with the debt collector Recovery, Defendant FirstStates was aware of the nature of collection activities pursued by Recovery, that Recovery attempts to collect multiple bills for purported services, and that there was no legal basis for billing and attempting to collect money from consumers for purported services from fire departments.

24.    Defendant FirstStates intended that Plaintiff rely on the misrepresentations in the FirstStates Letter.

25.    Plaintiff relied on the misrepresentations in the FirstStates Letter and believed that FirstStates was attempting to collect money from him and that if he did not pay that money, his credit would be negatively affected.

26.    As a result of the above described collection tactics, Defendant has illegally attempted to and has collected amounts of money from consumers that were not expressly authorized by an agreement creating a debt or permitted by law.

27.    Upon information and belief, Defendant has attempted to collect, and has collected, duplicate amounts of money from multiple consumers arising from a single vehicle incident.

28.    Mr. LaMonaca sustained particularized and concrete harm as a result of the actions of Defendant.   His Congressionally granted rights to remain free of false, deceptive and misleading representations, of unfair and unconscionable means to collect or attempt to collect debt, of attempts to collect money from him for which there was no basis in contract or law, and his right to obtain validation and verification of the alleged debt pursuant to federal statutory requirements, were all

denied by Defendant.   These rights were designed by Congress to protect against invasions of

individual privacy, and Defendant deprived Plaintiff of those rights.    Plaintiff's privacy was invaded,

and Defendant's actions include the threat to report a non-existent financial obligation to the credit

bureaus, caused significant upset and emotional distress.

29.    Defendant knew or should have known that its actions violated the FDCPA and

other applicable laws.   Defendant could have taken steps necessary to bring their collection

activity into compliance with the FDCPA and other laws, but knowingly neglected to do so and

failed to adequately review its actions to ensure compliance with the law.

## IV.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a)

and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

a.    **The FirstStates Class**: All persons who, beginning one year prior
to the filing of this Complaint through and including the final
resolution of this case, were sent one or more letter(s) from
Defendant FirstStates Financial Services Corp. in a form
substantially similar to the FirstStates Letter attached hereto as
Exhibit A.

b.    **The New Jersey-FirstStates Subclass**: All residents of New Jersey
who, beginning six years prior to the filing of this Complaint
through and including the final resolution of this case, were sent one
or more letter(s) from Defendant FirstStates Financial Services
Corp. in a form substantially similar to the FirstStates Letter
attached hereto as Exhibit A.

c.    **The Pennsylvania-FirstStates Subclass**: All residents of
Pennsylvania who, beginning six years prior to the filing of this
Complaint through and including the final resolution of this case,
were sent one or more letter(s) from Defendant FirstStates Financial
Services Corp. in a form substantially similar to the FirstStates
Letter attached hereto as Exhibit A.

31.    The Classes are so numerous that joinder of all members is impracticable.   This

Complaint concerns mass-produced form collection letters.   Although only Defendant knows the

precise number of Class members, Defendant regularly collects or attempts to collect money from consumers through the mailing of collection letters.

32.    There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members.   The principal common questions include:

a.    Whether the FDCPA was violated by Defendant FirstStates by attempting to recover more money than was originally assessed to a consumer;

b.     Whether FirstStates made a false statement of the character, amount or legal status of the alleged debt;

c.    Whether FirstStates communicated or threatened to communicate credit information which it knew, or which it should have known to be false;

d.    Whether FirstStates made a false statement that a consumer had agreed to "pay the obligation;"

e.    Whether Defendant violated the FDCPA by collecting or attempting to collect amounts not expressly authorized by an agreement creating a debt or permitted by law;

f.    Whether Defendant's collection letters overshadowed or contradicted the validation notice required by section 1692g of the FDCPA;

g.    Whether Defendant collected duplicate and excess amounts by billing multiple consumers for the same amounts;

h.    How much money Defendant has collected from consumers during the class period;

i.    Whether the actions and omissions of the Defendant as described above violated the New Jersey Consumer Fraud Act;

j.      Whether the actions and omissions of the Defendant as described above violated the New Jersey Truth in Consumer Contract Warranty and Notice Act;

k.      Whether the actions and omissions of the Defendant as described above violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

l.      Whether the actions and omissions of the Defendant as described above violated the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq*.;

m.       Whether the actions and omissions of the Defendant as described above constitute actionable or equitable fraud;

n.      Whether the actions and omissions of the Defendant as described above invaded Plaintiff's and Class members' privacy; and,

o.      Whether the actions and omissions of the Defendant as described above constituted negligent or intentional infliction of emotional distress.

33.     Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

34.     Plaintiff will fairly and adequately protect the interests of the Classes.   Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unfair collection and unlawful business practices.   Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue this claim.

35.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to

individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

36.    A class action is a superior method for the fair and efficient adjudication of this controversy.   The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action under the FDCPA are $1,000.00.   Management of the Class claims is likely to present significantly fewer difficulties than those presented in many class claims.   The identities of the Class members may be obtained from Defendant's records.

## V.    CLAIMS

### Count One – FDCPA

### Plaintiff and FirstStates Class v. FirstStates Financial Services Corp.

37.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

38.    Plaintiff is a "consumer" within the meaning of section 1692a(3) of the FDCPA.

39.    Defendant FirstStates Financial Services Corp. is a "debt collector" within the meaning of section 1692a(6) of the FDCPA.

40.    Defendant FirstStates' May 15, 2018 Letter to the Plaintiff is a "communication" relating to a "debt" as defined by sections 1692a(2) and 1692a(5) of the FDCPA.

41.    Defendant FirstStates violated the FDCPA as to Plaintiff and the FirstStates Class. Defendant's violations include, but are not limited to, violations of sections 1692e, 1692f(1) and 1692g of the FDCPA, as evidenced by the following conduct:

a.    Attempting to recover more money than was originally assessed to a consumer;

b.    Making a false statement of the character, amount or legal status of the alleged debt;

c.    Communicating or threatening to communicate credit information which it knew or which should have known to be false;

d.    Making a false, deceptive and misleading representation that a consumer had agreed to "pay the obligation;"

e.    Sending collection letters that overshadowed or contradicted the validation notice required by section 1692g of the FDCPA;

f.    Collecting or attempting to collect amounts not expressly authorized by an agreement creating a debt or permitted by law;

g.    Collecting or attempting to collect duplicate and excess amounts from multiple consumers for the same amounts.

42.    Defendant FirstStates' actions as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's and the FirstStates Class's rights under the law and with the purpose of coercing Plaintiff and members of the FirstStates Class to pay alleged debt that they did not owe and for which there was no basis in contract or law.

43.    As a result of the violations of the FDCPA, Defendant FirstStates is liable to the Plaintiff and members of the FirstStates Class for actual damages, statutory damages, costs and attorney's fees.

**Count Two – New Jersey Consumer Fraud Act**

**Plaintiff and New Jersey-FirstStates Subclass v. FirstStates Financial Services Corp.**

44.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

45.     Plaintiff LaMonaca brings this cause of action pursuant to the New Jersey Consumer Fraud Act ("CFA"), on Plaintiff's behalf and on behalf of the New Jersey-FirstStates Subclass.

46.     The CFA explicitly and without qualification outlaws "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact … in connection with the sale or advertisement of any merchandise or real estate … whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. § 56:8-2.

47.     The purported services rendered by the Chester Fire Department constitute "merchandise" within the meaning of the CFA, N.J.S.A. § 56:8-1(c).

48.     Defendant FirstStates is a "person" within the meaning of the CFA, N.J.S.A. § 56:8-1(d).

49.     Defendant FirstStates has violated the CFA as it has used and employed unfair and deceptive practices in connection with attempts to collect money arising from the purported services rendered by the Chester Fire Department, as described herein.

50.     Defendant FirstStates' business practices constitute unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in its interactions with Plaintiff and those similarly situated, in violation of the CFA.

51.     Plaintiff and those similarly situated suffered ascertainable losses as described herein.

**Count Three – New Jersey Truth in Consumer Contract Warranty Notice Act**

**Plaintiff and New Jersey-FirstStates Subclass v. FirstStates Financial Services Corp.**

52.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

53.     Plaintiff LaMonaca brings this cause of action under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.* ("TCCWNA"), on Plaintiff's behalf and on behalf of the New Jersey-FirstStates Subclass.

54.     TCCWNA provides in relevant part that "(n)o seller … shall in the course of his business offer to any consumer or prospective consumer or enter into any written contract or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller ... as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."   N.J.S.A § 56:12-15.

55.     Plaintiff is a "consumer" within the meaning of TCCWNA.

56.     Defendant FirstStates is a "seller" within the meaning of TCCWNA.

57.     The FirstStates Letter, described above, displays a notice that is false, deceptive and misleading as described herein.

58.     The false notice that services were rendered, that the amount purportedly due has increased over 33%, that the entire balance "is now due and payable because you failed to pay the obligation as agreed," that the account may be reported to the "Credit Bureau" if no suitable resolution is reached within thirty days of the Letter, while at the same time providing thirty days from receipt of the letter to dispute the validity of the alleged debt, when none of that is true, violates the legal rights of the Plaintiff and the New Jersey-FirstStates Subclass, and the responsibilities of Defendant FirstStates.

12

59.     The FirstStates Letter violates New Jersey law as unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations.

**Count Four – Pennsylvania Unfair Trade Practices and Consumer Protection Law**

**Plaintiff and Pennsylvania-FirstStates Subclass v. FirstStates Financial Services Corp.**

60.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

61.     Plaintiff LaMonaca brings this cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*. ("CPL"), on Plaintiff's behalf and on behalf of the Pennsylvania-FirstStates Subclass.

62.     The CPL provides in part that engaging in any fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding is an unfair method of competition and an unfair or deceptive act or practice.   73 P.S. § 201-2(4)(xxi).

63.     Plaintiff and Defendant FirstStates are each a "person" within the meaning of the CPL.   73 P.S. § 201-2(2).

64.     Defendant FirstStates has violated the CPL as it has used and employed unfair and deceptive practices creating a likelihood of confusion or of misunderstanding in connection with attempts to collect money arising from the purported services rendered by the Chester Fire Department, as described herein.

65.      Defendant FirstStates' business practices constitute unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in its interactions with Plaintiff and those similarly situated, in violation of the CPL.

66.     Plaintiff and those similarly situated suffered ascertainable losses as described herein.

**Count Five – Pennsylvania Fair Credit Extension Uniformity Act**

**Plaintiff and Pennsylvania-FirstStates Subclass v. FirstStates Financial Services Corp.**

67.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

68.     Plaintiff LaMonaca brings this cause of action under the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq*. ("FCEUA"), on Plaintiff's behalf and on behalf of the Pennsylvania-FirstStates Subclass.

69.     Plaintiff is a "consumer" within the meaning of the FCEUA, 73 P.S. § 2270.3.

70.     Defendant FirstStates is a "creditor" or "debt collector" within the meaning of 73 P.S. § 2270.3.

71.     The FCEUA provides that it "shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*."  73 P.S. 2270.4(a).

72.     The FCEUA further provides that creditors are prohibited from engaging in unfair or deceptive debt collection acts or practices or unfair or unconscionable means to collect or attempt to collect a debt, including but not limited to the use of false, deceptive or misleading representations or means in connection with the collection of debt; false representation of the character, amount or legal status of any debt; the threat to take any action that cannot legally be taken or that is not intended to be taken; communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that debt is disputed; or, the collection of any amount unless such amount is expressly authorized by an agreement creating the debt, or permitted by law.  73 P.S. § 2270.4(b)(5), (6).

73.     Defendant FirstStates has violated the FCEUA by its actions and omissions, as

described above.

74.     Plaintiff and those similarly situated suffered ascertainable losses as described herein.

## Count Six – Actionable Fraud

### Plaintiff and FirstStates Class v. FirstStates Financial Services Corp.

75.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

76.     Defendant FirstStates made material misrepresentations concerning Plaintiff's obligation to pay for services provided by the Chester Fire Department, including but not limited to misrepresentations that Plaintiff owed the sum of $800.40; that Plaintiff had agreed to pay the obligation; that Plaintiff had thirty days after receipt of the FirstStates Letter to dispute the validity of the debt but at the same time "if a suitable resolution has not been made within thirty (30) days of this correspondence, your account may be reported to the Credit Bureau;" the money was due on receipt; and, that the bill was his responsibility.

77.     Defendant knew that the misrepresentations were false.

78.     Defendant intended that Plaintiff rely on the false representations.

79.     Plaintiff reasonably relied on the misrepresentations in believing that Defendant FirstStates intended to collect money from him that he did not owe and that if he did not pay, that his credit would be negatively affected.

## Count Seven – Equitable Fraud

### Plaintiff and FirstStates Class v. FirstStates Financial Services Corp.

80.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

81.     Defendant FirstStates made material misrepresentations concerning Plaintiff's obligation to pay for services provided by the Chester Fire Department, including but not limited

to misrepresentations that Plaintiff owed $800.40; that Plaintiff had agreed to pay the obligation; that Plaintiff had thirty days after receipt of the FirstStates Letter to dispute the validity of the debt but at the same time "if a suitable resolution has not been made within thirty (30) days of this correspondence, your account may be reported to the Credit Bureau;" and, that the bill was his responsibility.

82.    Defendant knew that the misrepresentations were false.

83.    Plaintiff reasonably relied on the misrepresentations in believing that Defendant FirstStates intended to collect money from him that he did not owe and that if he did not pay, that his credit would be negatively affected.

## Count Eight – Invasion of Privacy

### Plaintiff v. FirstStates Financial Services Corp.

84.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

85.    The FirstStates Letter intentionally intruded upon the solitude of the Plaintiff and his private affairs and concerns, in a manner which would be highly offensive to a reasonable person.

86.    The FirstStates Letter publicized information that unreasonably placed Plaintiff in a false light before the public, in a manner which would be highly offensive to a reasonable person.

87.    Defendant FirstStates had knowledge or acted in reckless disregard as to the falsities contained in the FirstStates Letter and the false light in which Plaintiff would be placed.

## Count Nine – Negligent Infliction of Emotional Distress

### Plaintiff v. FirstStates Financial Services Corp.

88.    Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

89.    Defendant FirstStates owed a duty of reasonable care to the Plaintiff because it was

foreseeable that Plaintiff would be seriously distressed by being pursued for a financial obligation that was not his responsibility and by being threatened to be reported to consumer reporting agencies if he did not pay FirstStates what it demanded.

90.    Defendant breached that duty.

91.    Plaintiff suffered emotional distress as the proximate cause of that breach.

## Count Ten – Intentional Infliction of Emotional Distress

### Plaintiff v. FirstStates Financial Services Corp.

92. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

93.    Defendant FirstStates' conduct as described herein was extreme and outrageous. The conduct went beyond the bounds of decency and is intolerable in a civilized community.

94.    Defendant FirstStates acted intentionally or recklessly to collect money that it knew was not due and owing and intended to produce emotional distress with the FirstStates Letter.

95.    Defendant FirstStates acted recklessly in deliberate disregard of a high degree of probability that emotional distress would be caused by the FirstStates Letter.

96.    Defendant FirstStates' actions proximately caused Plaintiff's emotional distress.

## VII.    JURY TRIAL DEMAND

97.    Plaintiff demands trial by jury as to all issues so triable.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

A.    That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

B.    That judgment be entered against Defendant for actual damages;

C.    That judgment be entered against Defendant for statutory damages;

D.      That the Court award costs and reasonable attorneys' fees; and,

E.      That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:   July 19, 2018              BY:     _/s/ James A. Francis_
                                    James A. Francis
                                    David A. Searles (*pro hac vice* forthcoming)
                                    Land Title Building, Suite 1902
                                    100 South Broad Street
                                    Philadelphia, PA 19110
                                    (215) 735-8600

                                    *Attorneys for Plaintiff and the Classes*